JOHN I. HAMMOND vs. GEORGE E. LUMMIS.

First Judicial District, Hartford, May Term, 1927.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, J.

It is not essential to a valid gift of personal property that the delivery be manual, or that it be made to the donee in person, or that it, or the donor's intent, be indicated in any particular form or mode.

In 1905, when the plaintiff's aunt told him that she gave him an old clock, which was a family heirloom, she made no manual delivery to him; but in 1912, when she married, she delivered the clock to the house where the plaintiff resided with his father and there it was kept for about three years, when, without asking permission or making any comment, she took it to a new home occupied by herself and her husband, where it remained until after her death in 1920 and her husband's death in 1925, during which time both of them told various people that the clock belonged to the plaintiff and she, on her death bed, requested that it be returned to him. The plaintiff made no demand for the clock until two years before the commencement of the present action of replevin, having at that time married and established a separate home. Held that these facts supported the trial court's conclusion that the plaintiff's aunt had made a complete and irrevocable gift of the clock to him.

Argued May 3d—decided June 11th, 1927.

APPEAL by the defendant from a judgment rendered by a justice of the peace in favor of the plaintiff in an action of replevin brought to recover possession of

a clock, taken to the Superior Court in Windham County and tried to the court, *Baldwin, J.;* judgment for the plaintiff, and appeal by the defendant. *No error.*

*Mahlon H. Geissler,* for the appellant (defendant).

*John B. Harvey,* with whom was *Samuel B. Harvey,* for the appellee (plaintiff).

HAINES, J. The facts in evidence are inadequately presented by the finding. Of the subordinate facts which the defendant asks to have added to the finding, the evidence supports the following, and this addition is therefore made under our rule: In 1905, when the donor gave the clock to the plaintiff, no manual delivery was made to him, but the clock remained in the house of the donor until she delivered it to the plaintiff's home about the time of her marriage in 1912; that there were other members of the Hammond family living at the time of the gift in 1905; that the plaintiff retained exclusive possession of the clock from 1912 until the time the donor, without asking his consent, took it from his home, about 1915, and retained the exclusive possession of it to the time of her death in 1920; that Frank C. Lummis, the surviving husband of the donor, retained possession of the clock until his own death, about five years later, without specifically seeking or obtaining the consent of the plaintiff; that plaintiff made no demand upon the estate of the surviving husband within the time allowed for the presentation of claims.

The defendant's motion for a nonsuit, made after the presentation of the plaintiff's case in the Superior Court, was denied, and the defendant refusing to introduce any evidence, the court rendered judgment in

favor of the plaintiff that he recover immediate pos-
session of the clock, and $1 damages.

The more important and controlling facts of the case,
as thus disclosed by the corrected finding, are: that
in 1905 or 1906, when the plaintiff was about fourteen
years old, his aunt, Cynthia Hammond, a single woman
living alone in her own home in Hampton, owned an
old-fashioned wooden clock known as a "Grandfather's
Clock"; that one day about that time, while plaintiff
was in her home, she told him the history of the clock,
that it was made by one of the Hammond ancestors,
generations ago, and had always been in the Hammond
family, and that it was her wish that it always remain
in the Hammond family, and she then said to the
plaintiff, that she gave the clock to him. The clock
was not then physically delivered to him, but remained
in her home until about 1912, when she married, and
she then delivered the clock to the plaintiff's home,
which was the home of his father and there the clock
remained in use in the dining room for about three
years. There is no evidence of her statements, if any
were made, as to her purpose in so delivering the clock.
About three years after she had taken up her home
with her husband, in Chaplin, she came to the home
of the plaintiff and took the clock to her new home,
where it remained until her death in 1920. There is
no evidence as to any statement she made as to her
purpose in again taking possession of the clock, but
she made no request of the plaintiff for permission to
take it. While the clock was in her new home during
this period, both she and her husband had considerable
collections of antique furniture, and she showed them,
including this clock, to various people and told several
of them that the clock belonged to the plaintiff. In
her last illness, she told the nurse the clock belonged
to the plaintiff, and directed the nurse to deliver the

clock to him in the event the donor did not recover. After his wife's death, the surviving husband stated that the clock was the property of the plaintiff, but asked the nurse to allow it to remain where it was because his wife had been so fond of it, which request was granted by the nurse. So far as appears, the consent of the plaintiff was not asked by the husband, but the clock remained in his house for the five years that he lived thereafter. The plaintiff made no demand upon the administrator of the estate of Frank C. Lummis and did not ask for the possession of the clock until about two years before the present action was brought, when he was married, and for the first time had a home separate and apart from his father.

We have no hesitation in saying that the facts are sufficient to warrant the conclusion of the trial court, that the clock was given to the plaintiff about 1905 by his aunt. Under the circumstances, the acceptance of the gift by the boy will be presumed. *Innes* v. *Potter,* 130 Minn. 320, 153 N. W. 604; *Martin* v. *Funk,* 75 N. Y. 134; *Burbank* v. *Stevens,* 104 Conn. 17, 23, 131 Atl. 742.

The crucial test of the whole case lies in the questions of the intention of the donor and the requisite delivery. She did not make manual delivery of the clock to the plaintiff in 1905, but such manual delivery is not essential to the validity of the gift. "It is not necessary that there should be a manual delivery of the thing given, nor that it should be made to the donee in person; nor is there any particular form or mode in which the transfer must be made or by which the intention of the donor must be expressed." *Main's Appeal,* 73 Conn. 638, 640, 48 Atl. 965.

We are not forced to decide that there was a constructive delivery of the clock in 1905. The donor married some time later, and delivered the clock to

the home of the plaintiff, where it was retained and used for three years. This was the plaintiff's only home, and here again, the intent of the donor becomes important. The fact that some time elapsed between the gift in 1905 and the delivery about 1912, is not controlling, provided a delivery was intended. In view of the statements of the donor after this delivery, that the clock belonged, not to her, but to the plaintiff, together with all the surrounding circumstances, we are warranted in accepting the conclusion of the trial court, that there was an intent to make delivery to the plaintiff in 1912. *Meriden Savings Bank* v. *Wellington,* 64 Conn. 553, 555, 30 Atl. 774; *Doolan* v. *Heiser,* 89 Conn. 321, 324, 94 Atl. 354.

We are satisfied that a complete and irrevocable gift was made by Cynthia Hammond to the plaintiff, and completed by delivery before her death. The failure of the nurse to make prompt delivery of the clock, and the fact that it continued to remain in the home of the deceased to the time of the surviving husband's death, cannot alter the legal effect of the acts of Cynthia Hammond.

For the reasons stated, the failure of the plaintiff to present a claim against the estate of Frank C. Lummis, has no significance. The plaintiff had no claim against the estate to make. The estate owed him nothing. The title was in him at the death of his aunt and has since remained there, and no valid claim can be made that it was divested by abandonment.

There is no error.

In this opinion the other judges concurred.