[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By writ, summons and complaint, dated April 9, 2001, and amended on April 16, 2001, the plaintiff, Virginia Lawson, is seeking a dissolution of her marriage to the defendant, Rahn Lawson, who filed his answer and counterclaim on June 4, 2001.
After a full trial, the court, by a preponderance of the credible, relevant, reliable and legally admissible evidence and the reasonable, rational, logical and lawful inferences to be drawn therefrom, finds, rules, determines and awards as follows.
The plaintiff, whose birth name was Virginia Clarke and the defendant were intermarried on April 7, 1979, in Old Saybrook, Connecticut.
The plaintiff for more than one year prior to the date of the filing of the complaint has resided in this state.
The plaintiff and the defendant have two minor children issue of the marriage, namely Tyler Lawson born April 10, 1986 and Georgia Lawson, born with Down's Syndrome, on August 11, 1991. The oldest child, Asher Lawson, has, since the filing of the complaint, attained his majority.
No other children have been born to the plaintiff since the date of the marriage.
No governmental agency is contributing to the support of any party to this action.
The marriage of the parties have broken down irretrievably.
The plaintiff completed two years of college before the marriage. Since the marriage, the defendant has earned an Associates Degree in Electronic CT Page 1902 Technology.
At the time of the trial, the plaintiff was employed part time in the Acton Library in Old Saybrook and earns approximately $200.00 per week.
The defendant is currently unemployed and is receiving unemployment compensation of approximately $400.00 per week. By financial affidavit, dated July 16, 2001, the defendant indicated that he was earning approximately $770.00 per week.
The plaintiff, until the birth of the parties' first child for a period of four years after the marriage, worked full time. She also worked part time while having their second and third child. The plaintiff, from Georgia's birth in 1991 until March of 1999, did not work outside the home. Since March of 1999, the plaintiff has been employed as indicated above.
The defendant has had in excess of fifteen jobs since the date of the marriage twenty-three years ago. He was laid off in October of 2001 from his last job. At the time of trial, he indicated he was to receive unemployment compensation of approximately $400.00 per week.
The plaintiff entered the marriage with an excess of $100,000 in stock given to her by her parents from the time she was a child.
In the beginning of their marriage the parties lived in a rented house in Cleveland, Ohio. In 1993, when their first child was born, they lived in a house owned by the plaintiffs grandfather in Rhode Island. They lived there for four years without having to pay rent. It was during this time that the defendant earned his Associates Degree.
The first house purchased by the parties was in Warwick, Rhode Island with a down payment of $10,000 furnished by the plaintiffs parents and approximately $31,000 from the plaintiffs stocks. The house was sold at a loss when the family moved to West Chicago, Illinois to accommodate the defendant's new job. The second house was purchased in West Chicago, the down payment and closing costs totaling $32,000 was generated from the sale of more stocks owned by the plaintiff
In 1992, the parties sold their Chicago house at a loss.
In 1992, the parties purchased a house in York, Pennsylvania. The down payment of $42,000 was derived from the sale of stocks owned by the plaintiff. This house was sold six years later resulting in another loss.
In 1997, the parties moved to Old Saybrook where the plaintiffs parents CT Page 1903 quit claimed the family home to them and took back a $135,000 mortgage.
The parties never made a payment towards the mortgage note. Despite the contention that the plaintiffs parents indicated that they would forgive the mortgage, there was no evidence submitted to the court that the mortgage has in fact been forgiven. There was no release of note or mortgage. To constitute a gift inter vivos of personal property (here, a release of mortgage or note) there must be not only a delivery of the property but also an intent on the donor that title shall pass to the donees. Kukanskis v. Jasut, 169 Conn. 29, 34 (1975). No such delivery or intent was shown.
The court expressly finds that the marital home is subject to a mortgage in the amount of $135,000 held by the plaintiffs parents.
Although the plaintiff admitted to an affair early in the marriage, and certain correspondence with a classmate she had not seen in twenty-six years, the court expressly finds that such acts were not a determining factor in the breakdown of the marriage.
Throughout the marriage there was conflict between the parties, concerning the defendant's multiple job changes, the resulting numerous changes of residences, the loss of investment and the utilization of the plaintiffs stock in financing each change of residence, the difficulty of raising three children while the defendant traveled and changed jobs, and finally, the disposition of the defendant to react violently in confrontational incidences, which culminated in the breakdown of the marriage. The court expressly finds that the action and attitude of the defendant caused the breakdown of the marriage.
In accordance with the criteria established in General Statutes § § 46b-81 and 46b-84, the court makes the following awards as to the equitable distribution of property, custody and support of the minor children.
There is no alimony awarded to either party.
The defendant shall immediately quit claim to the plaintiff all his right, title and interest in the real property located at 6 Fox Hill Road in Old Saybrook, CT. The plaintiff shall assume all liability with respect to the mortgage, taxes and insurances on said property, and indemnify and hold the defendant harmless therein.
The plaintiff shall transfer to the defendant all her right, title and interest in FPL stocks and the 3M stocks currently in joint names and listed on the plaintiffs financial affidavit. Said stocks approximate CT Page 1904 $17,700 in value.
The defendant husband shall transfer to the plaintiff all of his right, title and interest in the Bristol Meyers Squibb stock and the Zimmer stock currently in the joint names of the parties and listed on the plaintiffs financial affidavit. Said stocks approximate $35,500 in value.
The plaintiff wife shall retain her ownership of Vanguard Windsor stock and the defendant shall retain his ownership in his 401k plan through Gretag.
The court expressly holds that the following shares of stocks are the property of the minor child, Georgia Lawson, and those in the name of Virginia C. Lawson or Rahn Lawson, shall be transferred to Virginia C. Lawson as trustee for Georgia Lawson. If the plaintiff wishes to transfer the stock to a special needs trust for Georgia and request trustees other than herself, it is her decision to make.
Said stocks are as follows:
Company or Fund No. of Shares App. Value
American Home Product 80 5,000.00 BP Amoco 164 8,660.84 Citigroup 288 14,616.00 Exxon-Mobil 200 17,674.00 FPL 125 7,576.25 The Hartford 46 3,093.50 Household 579 36,940.20 Imation 100 2,240.00 ITT Industries 100 4,542.00 3M 200 23,906.00 Pfizer 300 13,326.00 Rayonier 11 490.82 Vanguard 266.063 5,073.82 Verizon 228.5365 6,696.75
The parties shall execute all documents necessary to effectuate the transfers as ordered.
The defendant, where available through his employer, shall maintain health insurance for the benefit of the minor children. Until such time, the plaintiff and defendant shall be responsible for 50% of the premium cost and 50% of the copay and all other unreimbursed medical expenses. CT Page 1905
The defendant, where available through his employer, shall maintain a life insurance policy in the amount of $100,000 naming a trust for the benefit of the minor children.
The furniture and personal property, except as described below, located in the marital home is set out to the plaintiff to be hers free and clear of all claims of the defendant.
Those items of personal property belonging to the defendant, which have not previously been delivered and which are listed in the parties' agreement of November 16, 2001, shall be his free and clear of all claims of the plaintiff. Any undelivered items shall be transferred in accordance with said agreement.
Custody of the minor children is to be joint custody with the principal residence with the plaintiff. The defendant shall have the right of reasonable visitation.
The defendant shall pay as child support the sum of $125.00 per week. When the defendant becomes employed, the payment should be adjusted pursuant to the child support guidelines.
The defendant is ordered, pursuant to General Statutes § 46b-84
(c), to provide child support for Georgia Lawson, the parties' daughter who was born with Down's Syndrome, until she reaches the age of twenty-one.
The court makes no order for the defendant to pay child support for the sixteen weeks he made no payment. This factor along with other criteria established in General Statutes §§ 46b-81 and 46b-84 have been considered in the fashioning of the court's decision.
A decree may enter incorporating therein the above orders and awards of the court, and restoring to the plaintiff her birth name, to wit, Virginia B. Clarke.
 ___________________ DANIEL F. SPALLONE JUDGE TRIAL REFEREE