[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The two captioned cases have been consolidated and have been tried and are to be decided together. In addition, the trial of these cases was bifurcated with stock ownership first to be determined together with the validity of corporate actions taken by the parties. Subsequently, the issue of damages will be tried and determined.
All of the parties in these two actions are parties in each of the captioned cases. In Docket No. CV01-0507390S, the plaintiffs are Michael Turner, Robin S. Evans and Sams Floor Covering, Inc. with the defendant being, Thomas Steinbach. Hereinafter, this case is referenced as "Turner."
In Docket No. CV01-0507528S the plaintiffs are Thomas G. Steinbach and Sams Floor Covering, Inc. with the named defendants. Michael Turner and CT Page 6544 Robin S. Evans. Hereinafter, this case is referenced as "Steinbach."
In the Turner action, the plaintiffs seek specific performance of a contractual agreement for the conveyance by Steinbach of all of his ownership interest in stock of Sams Floor Covering, Inc. back to the corporation.
In the Steinbach action, the plaintiffs seek to enjoin the defendants, Turner and Evans, from any further involvement with Sams Floor Covering, Inc. corporation. These actions are concerned with the control of the corporation, Sams Floor Covering, Inc.
The corporate background begins in 1994 when Steinbach was the owner of a business at the same location. It ran into financial difficulties. He initiated discussions with others to form a new corporation. He would operate the business since he had the background and expertise, and they would be the stockholders and own the corporation. Further, he lent the corporation about $25,000 to get the business started. Thus, Sams Floor Covering, Inc. came into existence with one hundred shares of stock divided among: Robin Evans, eighty-five shares; Antonio Palomo, five shares; Donald Petit, five shares, and Michael Turner, five shares. Steinbach would have no stock ownership nor would he hold any corporate office. He would, however, be the general manager and would run the business. The corporate officers were: President, Michael Turner; Secretary, Donald Petit; Treasurer, Robin Evans. Turner and Evans, together with Steinbach, were employees of the corporation; Steinbach, the overseer of the whole business, as general manager; Turner was in charge of sales, and Evans was in charge of the books and payroll.
There was no question that Steinbach was the controlling personality in the corporation. He was the one with experience in the business. He organized the corporation. the stockholders and the election of the officers. He also had set up the computer system and was the only one fully knowledgeable in its operational capabilities. He was the merchandise buyer and controlled the inventory. Although both Turner and Evans ran the day-to-day operations in their respective areas, whenever problems or questions arose concerning the corporation Steinbach was always consulted and involved in the resolution of the issue.
Beside Steinbach's deep involvement in the corporate operations, he and Evans developed a close personal relationship, and he moved into her home.
This close personal/business relationship between the two of them continued until they broke up about April 1995, and he moved out of her house. Shortly thereafter, about April 1995, she delivered her stock CT Page 6545 certificates and the corporation's books to Attorney Christian Hoheb for delivery to Steinbach. About six months later she went into personal bankruptcy and left the employment with Sams Floor Covering Inc.
Attorney Hoheb informed Steinbach that he had the stock certificates and to pick them up. To replace Evans, Steinbach then on his own initiative installed another woman, Jean Fentner, as the corporate treasurer and as the employee to do the work previously performed by Evans. These changes were carried out on the corporate level by Steinbach.
A year or so later, in 1997, Steinbach attempted to renew the lease of the corporation's store space. The lessor refused to deal with him. Steinbach then, on his own initiative, contacted Evans and invited her to return to her former positions at the corporation and to renegotiate the lease for the store. She did return to the corporation both as an employee and as secretary. When she agreed to return, Steinbach picked up stock shares and corporate documents left by Evans with Attorney Hoheb, and gave them back to Evans telling her she was now in the same position as she was in prior to leaving. When she pointed out that she had given her shares to him, he told her that since he had not taken possession of the certificates until her return and was now giving them back to her the certificates were hers again, and there was no need to do anything more with them.
She accepted his explanation, as well as the certificates, and returned to her former positions as secretary/treasurer of the corporation and as an employee. The corporation, as did the parties' employment with the corporation, continued for several years. About December 1999, Evans discovered discrepancies in cash receipts. When she confronted Steinbach with these deficiencies, he admitted to taking money from the cash registers. This led to Steinbach leaving his employment with Sams Floor Covering, Inc. and the execution of the Shareholder Re-purchase Agreement. (Exhibit A.)
The caption cases were initiated when Steinbach pressed for immediate payment of the money set out in the agreement and Turner and Evans refused his request, pointing out that he had not carried out the terms of the agreement, which were required of him.
Within a few weeks of leaving his employment with Sams Floor Covering Inc., Steinbach and the corporation, through Turner as president and Evans as secretary/treasurer, entered into an agreement (Exhibit A), inter alia, to buy Steinbach's stock interest in the corporation. The interpretation of that agreement is at issue between the parties. CT Page 6546
The court finds as to Michael Turner, et al. vs. Thomas Steinbach, Docket No. CV01-0507390S, that the parties entered into an agreement (Exhibit A.) That agreement provided for the sum of $21,441.79 to be placed in trust with Steinbach's attorney, Richard Lacey, payable to Thomas Steinbach when the terms of the agreement required to be performed by Steinbach have been complied with.
Steinbach argues that he interpreted the agreement to provide immediate payment of the monies to him; and, if that was not the intent of the other parties, then there was no meeting of the minds as to the terms of the agreement and thus no valid agreement exists.
The court finds no support for this contention by Steinbach. In Section 1, Paragraph C, Subparagraph VIII of the agreement, it reads, "Cooperate with the Corporation to release all funds from Fleet Bank less the sum of [inked out] which shall be held in escrow by the Shareholder's Counsel pending [this also was marked over with ink but reads] Shareholder's completion of the requirements listed in Section 1C of this agreement" after which was written in ink "OMIT."
Above this paragraph were written in ink "21,441.79" together with other sums that totaled $21,441.79. Immediately above these handwritten amounts were the handwritten initials "RSE."
The court interprets and finds that the above subparagraph together with the handwritten additions above the subparagraph was incorporated into and made a part of that paragraph when initialed by Evans, as an officer of the corporation. On the other hand, the court interprets and finds that the inked-out phrase at the end of this sentence, even though followed by the word "OMIT," remains a part of this paragraph and was not accepted as a change by the corporation or any of its officers.
The court notes that throughout the typed agreement Steinbach had made numerous handwritten changes, including scratch outs accompanied by the word "Omit," which were then initialed by Evans as an indication of the acceptance of these changes by the corporation. Steinbach was present and participated in the discussions of the agreement and his handwritten changes as well as the acceptance or not of each of his changes by the corporation. The acceptance of a change was initialed by Evans for the corporation. Steinbach in turn accepted the agreement with those changes made by him and accepted by the corporation when Evans initialed each acceptable change. He knew or should have known what he was agreeing to.
Steinbach seeks to invalidate the agreement after he executed it because he now disagrees with its clear intent. The court finds that the agreement between the parties is valid and enforceable. That, the CT Page 6547 defendant, George Steinbach, is to transfer all of his stock interests in Sams Floor Covering, Inc. to the corporation; he is also to proceed promptly in carrying out those terms of the agreement as set out therein.
As to Docket No. CV01-0507528S, Thomas G. Steinbach, et al. vs. MichaelTurner, et al., the plaintiffs seek to enjoin the defendants, Michael Turner and Robin S. Evans, from continuing in positions of control in the corporation, Sams Floor Covering, Inc.
The issue presented in this case is directed to the position of authority each defendant, Turner and Evans, occupies in the corporation; and, whether that position was obtained through the exercise by stockholders of valid ownership rights.
Steinbach contends, inter alia, that he is the majority stockholder and has been from the time that Evans endorsed her shares of stock to him and delivered them to Attorney Hoheb to present to Steinbach. Thus, when Evans left the corporation for a period of time, Steinbach openly and directly exerted control over the corporation: he called a special meeting of the directors, removed Evans as the treasurer/secretary and had a successor secretary installed. Subsequently, he failed to renegotiate the store lease. Without that lease, the business was in danger of collapsing. He called on Evans to return to the corporation with the promise to reinstate her to her former positions as employee and as corporate secretary/treasurer. Evans did return, she renegotiated the lease, insisted that the corporate books be brought up to date and that the corporate tax returns and statutory reports be filed. Steinbach agreed to this and it was implemented with the assistance of Attorney Edward C. Kraweicki, Jr. Evans proceeded both as an employee and as a corporate officer after Steinbach obtained possession of the stock certificates that she had previously delivered to Attorney Hoheb. When Steinback obtained the certificates from Attorney Hoheb he then returned them to Evans specifically stating that he was giving them back to her; that no further action regarding the certificates needed to be taken; and, that her position was again what it was prior to her leaving Sams.
Thereafter, Evans, together with the other employees and corporate officers, continued operating the business as they had in the past. Therefore, at this time, i.e., when Evans returned as a corporate employee and Steinbach gave back to her the stock certificates she had left with Attorney Hoheb for Steinbach, Evans again became the owner of eighty-five shares of Sams Floor Covering, Inc. 18A Am.Jur. 2ndCorporations § 738, pp. 607-608 (1985).
Steinbach in giving the physical possession of the certificates to Evans signified his intent to transfer any interest he had in the CT Page 6548 certificates to her. This could be construed as a gift by him to her.Kukanskis v. Jasut, 169 Conn. 29 (1975). Especially since she had previously left those same certificates for him with Attorney Hoheb for delivery to him, Steinbach.
It could also be construed as payment by Steinbach for her return to the corporation at his request. In any case he transferred possession of the certificates to Evans indicating that they were being returned to her.
Thereafter, Evans carried out her duties as an employee and as a corporate officer. She arranged with Steinbach to have the corporate books and annual reports brought up to date and filed. This was accomplished with Attorney Edward C. Krawiecki, Jr. Steinbach fully participated in this reconstruction of the corporate records since he was computer literate and in charge of the records during Evan's absence.
Subsequently, during the period of reconstructing the corporate records, Evans transferred fifty shares of Sam's stock to Steinbach (Exhibit 10d) on February 2, 1998, with thirty-five shares of the original eighty-five shares remaining in her name.
This transfer of shares was described on the reconstructed corporate books as being a transfer to Steinbach from Evans and identified as Certificate No. 7 (Exhibit 10g), and Evan's remaining thirty-five shares were recorded as Certificate No. 9 (Exhibit 10I.)
The court notes that Evans transferred fifty shares of her eighty-five shares of stock to Steinbach on February 2, 1998. That at that time, she was the owner of eighty-five shares of stock of Sams Floor Covering, Inc. Thus, Steinbach later validly called a special meeting of the stockholders (Exhibits 21, 22.) However, his attempt at replacing directors and officers was not recognized by the meeting chairman, Attorney Joseph F. DePaolo, Jr., and no further attempt was made by Steinbach to reorganize that meeting or call another meeting to put through his slate of directors and officers. He did, however, submit his unofficial version of the business carried out at that meeting. This version of the minutes did not constitute valid corporate minutes and, thus, was insufficient to remove the officials he sought to remove. Therefore, the actions taken by the defendants herein on behalf of the corporation subsequent to that special meeting of stockholders were valid.
In any case, whether the subsequent corporate actions taken by the defendants herein were valid or not is moot. Steinbach did, through his agreement with the defendants (Exhibit A), remove them from any fault for CT Page 6549 these actions, which could be pressed by him. The court has previously determined that that agreement is valid and enforceable; therefore, Steinbach has no basis for his claim.
The only other stock transfers after that was in January 1998, when five shares were transferred from Petit to Evans (Exhibit 10C), and five shares from Palomo to Steinbach. (Exhibit 11.)
On January 24, 2001, Steinbach left the employment with Sams Floor Covering. On February 8, 2001 Steinbach entered into the agreement (Exhibit A) with Sams Floor Covering, Inc., wherein, inter alia, he would convey all of his stock to the corporation (Exhibit A.) There were other requirements that he was to fulfill. Sams Floor Covering would then pay the sum of $21,441.79 to Steinbach when his contractual obligations were fulfilled. Pending Steinbach's performing the contractual terms, the $21,441.79 would be held in trust for Steinbach by his Attorney Richard Lacey. A check for $21,441.79 (Exhibit B) was issued payable to attorney Richard Lacey, Trustee, and given to Steinbach. He turned over the check to Attorney Lacey who deposited it into his trust account. Subsequently, without transferring his shares of stock to Sams Floor Covering or performing any other of his contractual obligations, Steinbach demanded of the defendants, Evans and Turner, that the money held by Attorney Lacey in trust be immediately released to him. The defendants refused. These actions resulted.
The court finds that as of the time that Steinbach entered into the agreement to transfer all of his stock to the corporation he also agreed to remove himself completely from the corporation, i.e., as a stockholder, officer, director and employee. He also asked for and received assurances that he would be released by the defendants of all liability and claims by the defendants. (Exhibit A at C VIII B.) He in turn also released the defendants from all liabilities and claims he had against them. (Exhibit A at C VIII B.)
Therefore, the court finds, that as to the claims or allegations put forth by Steinbach in the action No. CV01-0507528S, Thomas G. Steinbachand Sams Floor Covering, Inc. vs. Michael Turner and Robin S. Evans, the plaintiffs have failed to prove their allegations through evidence sufficient for the court to enjoin and restrain the defendants from exercising dominion and control over the corporation, Sams Floor Covering, Inc., its business, assets and operation.
Further, as to the plaintiffs' verified complaint dated March 21, 2001, the court finds the issues raised in the plaintiffs' verified complaint, for the defendants. CT Page 6550
Therefore, judgment as to the request for a temporary and permanent injunction by the plaintiffs herein is denied.
Further, as to the plaintiffs' verified complaint, judgment may enter for the defendants, and against the plaintiffs; however, this judgment relates to liability only.
The issue of damages is yet to be heard, determined and ruled upon.
_________________ Kremski, J.T.R.